Thank you and good morning everyone. We'll call the first case on our list, Garlick v. QC Energy in Anadarko. Mr. Quass. Yes, sir. Good morning. My name is Dave Quass. I represent the estate of George Barton Garlick. I'd like to reserve 5 minutes of rebuttal time, please. On May 16, 2012, at 2.20 in the morning, an inexperienced truck driver driving in the Mr. Garlick was working for Trans Tech Logistics, which was under contract with a carrier called QC Energy, to transport water, both pure water and fracked water, to and from drill rig sites owned and operated, or leased and operated, by Anadarko. On this evening, which was the very first time that Mr. Garlick had been assigned to ride this particular route, having only three weeks of experience driving these baby bottle trucks, Mr. Garlick missed a turn at Beach Creek Mountain Road, continued past the designated route, and immediately entered an area that, by all accounts, is extremely dangerous for truck drivers, especially where the truck is a water-carrying truck, such that water sloshes around, and as the truck drives on a downgrade, there is something called liquid surge, which essentially is like a large wave inside the tank. But these events are all happening after he misses the turn. That is correct, Your Honor. And if I, because I think we're familiar with the facts, and certainly sorry for the loss that was suffered by the family, but your contention is that Anadarko provided directions to the destination, and that, if I understand your briefing, that as a result of providing those directions, or using the language of the restatement, undertaking to provide those directions, they were duty-bound to provide lights and signs. Yes, Your Honor. The question that I have for you is, my reading of Pennsylvania's law says that the duty to provide signs and lights on public roads belongs to a municipal entity or governmental entity that controls those roads. So if that's the state of the law, how can you visit upon Anadarko the obligation or duty to put up lights and signs on these roads? Let me interrupt you for just a second. Judge Vena-Turbin, are you with us? I am. I'm sorry I'm not there in person, but you're coming through loud and clear, and thank you for inquiring, sir. Okay, thank you. Yes, sir, you want to answer that question? Your Honor, the issue in the case need not be defined so narrowly as an alleged duty to install lights and signs. The nature of the duty that we're suggesting is instead a duty to create the safest and most efficient route possible, given the work to be done and the equipment to be used. And that undertaking is an undertaking that the Anadarko corporate designee, Mr. Lorsen, specifically said he undertook. Mr. Lorsen's sworn testimony under oath was that the Anadarko drill team endeavored to create the safest and most efficient routes possible. And in consultation with the governmental stakeholders, I think, is the language I remember saying. He was talking, yes, in general. He wasn't specifically talking about this particular route, but yes, in general, that's the case. You said this is the first time he had been assigned, but in fact he had taken the same route once before, hadn't he? This was the first time. On the same day. There is some GPS, there's no testimony to that effect, Your Honor. What there is is some GPS markings and some sign-ins that may suggest that fact. I understand that was a fact that the district court concluded. There's a question of fact as to whether this was his first trip or his second trip? There is, yeah, there's a question of fact, but I recognize the district court made that finding a fact. All right, so you say that the nature of the duty is not a duty to provide a sign or a duty to provide lighting. The nature of the duty is to provide a safe route. That's correct, and if I may, I can tell you about the facts that support the existence of that duty in addition to Mr. Lawerson's testimony. Why should we accept that as the duty of care as opposed to what Judge Schwartz just said, a duty to provide signs or a duty to provide better lighting? In other words, why should we adopt the broader formulation that you've come up with rather than the narrow one? Let's take a surgeon in the operating room. The criticism, let's say, of the surgery that goes awry is that the surgeon has performed an open procedure rather than using some sort of a scope. The argument then can't be made that the surgeon, having undertaken only to use an open procedure, has no duty to be careful with regard to using a scope. Of course, the duty that the surgeon has undertaken is the safe treatment of the patient during surgery. Our point here is Mr. Lawerson, on behalf of Anadarko, has committed, has testified that it was the endeavor of Anadarko to affirmatively choose the safest and most effective route. I understand that after the accident, Anadarko, in fact, provided lighting. After the accident, lighting was provided. In fact, after the accident, a sign was posted? Yes, sir. Can we consider those factors in determining the nature and duty of care? Yes, absolutely. At this point, the issue is not whether this would be admissible to prove negligence in the sense of a subsequent remedial measure. The issue instead is, given that there are questions of control that have been raised, as has been spoken by Judge Schwartz's question, as well as feasibility, at this point, those things can be considered as we address the question. Do you have a case, a Pennsylvania case, that says it can be considered at this point? Your Honor, no. The answer is no. I would reference for the Court the actual evidentiary rule concerning the admission of subsequent remedial measures. Those, of course, would be allowed if they were to either impeach or offered for purposes of establishing control or offered for purposes of feasibility. Moreover... Well, that's what you're relying on under the Pennsylvania Rules of Evidence. Yes, Your Honor. Moreover, in this... Why are you contending that a jury could be told that? The answer, Judge, is that we don't know at this point, because without defense expert reports, we don't know whether feasibility or ability to control would actually be contested. If they were, then yes, those things would be admissible. Isn't discovery closed, though? Isn't discovery closed? I mean, the summary judgment was granted, presumably, after all the discovery was... No, Your Honor. And we saw expert reports in the record. So discovery would be reopened, your theory? Discovery is not closed other than by the grant of summary judgment. Summary judgment was granted before we got to the point of defense expert reports being produced and... But we saw expert reports as part of the record. Not from the defense, Your Honor. Those were only the experts who took pictures of the road and were only plaintiffs' experts? Yes, Your Honor. I see. Yes. Okay. Mr. Glass, may I ask you one further question? Wasn't there, in fact, a sign alongside the road after the turnoff which said no traffic beyond this point? The testimony, Your Honor, is that was added after this accident, not before. It was added by who? I'm sorry, Your Honor. Anna Darko? The testimony about that is that it was actually done by QC upon consultation with Anna Darko, which further goes to the subsequent remedial measures issue, because as against Anna Darko, this wasn't a measure that they took, it was a measure that QC Energy took. It is true that the government is responsible for placing road signs and lighting on public roadways. You don't dispute that? As a general matter? As a general matter. Right, but I don't view that as being any sort of exclusive duty. Don't you sometimes see signs off the public right-of-way that say so many miles to Joe's Diner or World Drugs or whatever? You see it all the time, don't you? Yes, Your Honor. That goes to really with the point that I was about to make. There's nothing to prevent Anna Darko from putting signs on the public roadway, is there?  Or lighting. Nothing, Your Honor. It's a legitimate responsibility, but there can be a concurrent responsibility on the part of a private entity to put a sign up on a roadway or alongside a road. That is part of our argument, Your Honor, yes. Which is in fact what happened here. Yes, that's correct. If we were to adopt your definition of duty, does that mean that any entity that provides directions would then be liable if there were a failure to have proper signs on those directions? And I'm talking about any internet service provider that might provide directions. AAA provides trip ticks if you ever use that. You provide directions for a plumber to come to your house. Are we saying that every person who provides or every entity that provides directions to a destination has the obligation to ensure that that roadway is safe, clear, and safe? No, Your Honor, and I'm old enough to remember trip ticks. No, the answer is, the good news about Restatement 323 cases, the Good Samaritan Rule, and assumptions of duties, is that they are inevitably very, very factually specific and limited to their facts. So, no. An opinion could be created by this Court that defines the duty in a way that is narrow enough that it is not opening the floodgates by any stretch of the imagination. Very, very specific factors here where we're talking about a remote wilderness site, heavy fog, dangerous roads, the carrying of thousands of gallons of water in tanks that allow the water to slush. Very, very, very specific facts that would go into the creation of this duty. Thank you, Mr. Quash. We have five minutes for rebuttal. We'll get you back. Thank you, Your Honor. Ms. Hershberger? May it please the Court, Stephanie Hershberger on behalf of the Anadarko Appellees. You may follow up on Judge Schwartz's question to Mr. Quash about whether we're opening up a big problem by imposing a duty in this case. Yes, Your Honors. We certainly are, because actually we have to look under 323, the Restatement of Torts, what Anadarko affirmatively did to allegedly assume a duty to place signage and lighting along this route. That's the only way they can be found to have a duty. And what they did is they came up with this direction, this route book, that's very similar to what you would find on that quest. When you talk about a duty, you talk about an undertaking. Yes, Your Honor. This undertaking to maybe provide safe passage when there's a baseball game or sporting event, let's take a baseball game, the team may assume an undertaking to provide safety for people that sit behind home plate. There are many types of, once you do that, undertake a responsibility, you should do it in a safe and reasonable manner. So why can't we impose a duty here where Anadarko, in fact, undertook to provide a route along, apparently, a very treacherous path? Because they never assumed a duty to make sure that that route was absolutely safe. They assumed a duty to make sure it was the most efficient and safest route of the various possible routes that could be taken from point A to point B. We have, what you have is Anadarko has all these well pads, and then they have these freshwater sources, and they're hauling the water back and forth. So when they come in, they're trying to make it least disruptive to public traffic, residents, and the truckers. So there are really so many possible routes between... Do you dispute that there's any duty here at all? Exactly. What their duty was, was to provide correct directions and the safest route. And there's no doubt that that's what they did. There's no... Okay, so you don't dispute the idea that the duty was to provide a safe route. The safest route they could out of the possibilities. Okay. That's a different genre. If that's the duty, whether or not there was a breach of that duty, isn't that a jury question? But there's no duty. They had no duty to place lighting or signage. Maybe we're talking past each other. Yes, I think we are, Your Honor. I asked you if there was not a duty to provide a safe route. I thought you said that there was. No, the safest route out of the possible routes. But the duty is to provide the safest route. Yes, that's what Mr. Lawson testified to. For instance, just say there's three or four possible ways that you can go from Penn Eagle facility, which is where this freshwater source was, and way back there where this well pad was. Just say there's two or three possible ways. Anna Darko sat down with the local governments and said, okay, we think this way is the most efficient and the safest. It doesn't mean it's absolutely safe from everything in the world. I mean, they don't have control over what goes on in that road. If you take what they're saying, which, by the way, this is the first time I'm hearing this today, that we had a duty beyond placing lighting and signs, because that's totally even outside the scope of their complaint. It has always been lighting and signs. But if we had that duty to go and place lighting and signs. It's an odd formulation. Let's go back to the example I gave you about the people that sit behind home plate. They pay for tickets. Would you say that the team has the duty to provide the safest seats? Well, you assume a rescuer into a baseball game. I think they have a duty to provide a safe environment, but you're not guaranteeing absolute safety. You can still be hit. What about, let's take a concert or any activity in an enclosed place where people actually pay tickets. Is it the duty of the proprietors or the organizers to provide the safest exit in case of a fire? Yes. The safest? I think the safest they can. As opposed to simply safe exits? Right. Maybe there's only two exits where there should be, let's say, ten exits. Well, that's going to... So, Mary, you can't really talk about the safest, but you can talk about providing a safe exit in case of an emergency. But we're talking about two entirely. That's a landlord that invites someone onto their premises. No, no, no. You're paying money to go inside the place. Exactly. I'm not sure that's a landlord. They would be a business invitee in the Pennsylvania law, wouldn't they? Yes. And there's a special duty or getting business invitee? Yes. What I would like to know is before the accident, did your client make any decisions whatsoever about signs or lighting or whether that should be provided? No. There is no... Did they say no? Was it discussed or they just didn't make any decisions? They didn't assume that duty. They never discussed it. They did not do that. There's no evidence of record that they did. They didn't give any thought to that or anything. In other words, there's no consideration about whether an off-road sign outside the right-of-way or lighting or something should be provided. That's what you think? No. They provided directions for the best way to get to the place, the safest route. That's... Can't the evidence of subsequent conduct, that is, erecting signs and provide lighting be taken into account in determining whether there was a duty?  first of all, Anadarko didn't place signs or lighting after the account on the designated route. Now, wait a minute. I thought Mr. Kwas said that they placed another sign telling drivers not to go a certain way. Anadarko came in after the accident and off the route after you go past that turn, placed a sign that said no Anadarko traffic beyond that point. They did do that afterwards, not on the route. And that's to tell drivers, don't go any further, you're off the route. Yes. But they also provided lighting, did they not? No. That is not supported by the record. That was QC. That's okay. Let me finish. Let me just... Sure. On the same subject. They did work with QC, did they not, to find an electrician to install lighting? Yes, QC. They did. They said, here's a supplier you can use. I don't think that's going in and putting the lights in. QC came to Anadarko, and this is on Mr. Larson's testimony in the appendix, 1331 to about 1333. And he very specifically talks about what Anadarko did and did not do. And they provided the light source. They said, here's who you can use. But QC came to them after the accident and said we think it would be reasonable and prudent to put lighting in. Wasn't there a witness that testified they concurred in that decision? Yeah, yes. And they did. He said, yes, we said to QC, fine, go ahead. That is reasonable and prudent. Just because you agree with something that they want to do doesn't mean you're assuming a duty. It's very different. I can agree with someone. No, no. I'm not saying assuming a duty about putting lighting. I'm saying, is it the fact that they concurred in the idea that lighting would be helpful and also install the sign be taken into account or considered in determining whether they had a duty to provide safe passage? No. Because anyone who thinks something is feasible or safe, under 323, you have to have an affirmative assumption of a duty. You have to have affirmative action that shows that you took on a duty. And so you're saying that despite the precariousness of the route that we're talking about here, Anadarko had no duty to provide safe passage? Exactly. May I ask a question now? Although they were, the court found them statutory employers, didn't the district court find genuine issues of fact about the duty owed by QC defendants to Garlick and what makes Anadarko different? Yes, it did, Your Honor. And that's because QC did have control. They had, QC is the entity that Anadarko contracted with to actually provide the transportation service to deliver the water. And Anadarko actually is the one that came up with the driver's handbook, the policies and procedures and things like that, whereas Anadarko didn't. That's the difference. QC was sort of the in-between Anadarko and the third-party trucking companies. So you're saying all they did was what, with regard to the route?  QC. Oh, QC. QC, the route, they came in afterwards and added the flags and the lights. But they were more in charge of making sure the drivers were operating properly, safely. They had policies and procedures for drivers. For instance, how much experience you needed, which in this case, we know from the record that Mr. Garlick was very inexperienced and made misrepresentations on his application to that. But that's going off the track. That was QC's involvement, Your Honor, was hands-on with the trucking. And I think that's why the district court found an issue of fact with that. Now, once you undertook to provide this route, you said you had a duty to provide a safe route. Wouldn't really a jury have to decide whether or not you breached that duty to provide a safe route? No, Your Honor. First of all, and I know this distinction may sound a little bit odd, especially over the phone, but I said we had the duty to provide the safest route out of the possible routes that could be taken between those two points. I think there's a difference. There's only so many routes you can take. Let's pick the one that is the best. It doesn't mean it's safe. PennDOT is controlling that. Your Honor, how precarious that route is? You have no duty of care? We had the duty to make sure our directions were correct and that out of the routes that we could pick, that was the safest one. That's all they assumed. If they don't go and assume a duty, there is no duty. Well, as I understand it, the plaintiffs are saying that, I don't have their complaint in front of me right now, but assuming their complaint is broad enough to include the failure to properly lay out the safe route in the booklet that you provided, wouldn't that be an issue that a jury would have to decide? Yes, Your Honor. If that was in the complaint, that is not in the complaint. The only allegation in the amended complaint, by the way, they had an initial complaint where they alleged that Anadarko was responsible for the training of the truckers and all of that. We felt that Discovery did not bear that out and they filed an amended complaint. We did not object to that. The sole allegations in the amended complaint is that we failed to provide adequate or appropriate lighting and signage, not that the actual route itself was inappropriate. I thought the complaint said you have to provide a safe route. No. All right. Mr. Croft can speak to that. Judge Schwartz has a question. Yeah, thank you. You talk about providing the safest route from those that are possible. I take it from that. There were multiple potential avenues, but this was the one in the directions was the, quote, safest. Am I correct? I don't know how many routes were available that was not brought out in Discovery because I think it was outside the scope of everything. So we don't know if there's more than one way to get to the pad. Right. Okay. Maybe this was the only way. All right. We'll assume that that's the only facts we have is this was the only way to get to the destination. If you say that it's an obligation to provide the safest route, why doesn't that include lights and signs to identify the turnoff that was missed? Okay. If we go that step further, then we are getting into issues. For example, FedEx. It provides designated drivers different routes to go to different places. Does it suddenly, they think that this is the most efficient and safest route to get to point A to B. Do they suddenly then have to go out and make sure all the signage on that route is appropriate, make sure the lighting's appropriate, you know, that the grades are correct, that it's plowed. Does that interfere with other traffic out there? This is a duty that PennDOT already has. And I'm not saying that an entity couldn't come in in conjunction with PennDOT, work with PennDOT, and assume that duty. But if you're going to make a broad duty based on just giving a direction, I think you are opening a door and making it very broad for many businesses. Do you have any case law or statutory support for the idea that you pick the safest route and not a safe route? I could not find any case law. We would be the first to say that the obligation in a case like this is to provide among several routes, you just pick the safest one and that's your responsibility. Well, depending... Yes. Yes, I did not find any case law or point on this and I even checked, you know, thinking maybe in the last few days something came up. I'm just wondering of the social utility of a route like that because you would allow a lot of people to escape who otherwise should be held responsible. Can you imagine what kind of chaos you're going to create otherwise when you have all these different entities? It's not just Anadarko. You have FedEx, you have UPS, you have any business. Suppose you had provided them with a route that took the trucks under a bridge that was too low, that was below the usual 14 foot height or over a road with a bridge whose weight would not support the trucks that you're sending down that way, these heavy water trucks. Wouldn't that be part of your duty to provide a safe route? That possibly could be an issue in the case but there's nothing in this case that says the actual route was not safe. So there is more to it than just specifying a route. You've got to look at the route and decide whether it can safely accommodate these trucks that you're sending down there, don't you? Yes, and it did. If you look at the two day period where Mr. Garlick traveled at the sign-in sheets, there were over 250 truck deliveries on that two days, just two days. Mr. Garlick is the first person that anyone is aware of that missed that turn. I don't doubt that he may have been contributory negligent but the issue we have to deal with here is whether or not all of that has to be weighed and decided by a jury under the fair weight or preponderance of the evidence standard. Your Honor, I think that whether you have a duty is a legal question and I think that has to be determined by the court and only then do you get to the jury Correct. to the factual and proximate cause What does Pennsylvania tell us about determining whether there's a duty here or not? Pennsylvania adopts a section of 323 and the restatement of torts. That's the one being relied on by plaintiff in this case and that's you affirmatively had to undertake a specific duty. It can't be inferred, it can't be just because a danger is foreseeable or even that you know injury is going to occur you have to undertake a specific duty. We take into account the nature of the risk imposed and the foreseeability of the harm incurred. No, not for assuming a duty. But isn't that restatement 323 which Pennsylvania has adopted? I don't think that's in 323, Your Honor. I have 323 It's a five-factor test. I don't know if it's the Auerbach decision of the Pennsylvania Supreme Court which sets out a five-factor test. Right, and I think that's for whether the relationship of the parties the social utility of the act of conduct and number three, the nature of the risk imposed and foreseeability of the harm incurred. And that's whether you have a general duty I think, or is that under 323? That's what the plaintiff is saying. No, he proceeded under 323 only in his briefs. Say that again? He has only raised section 323 in his briefs so that's what he's limited to. He can't come in now and appeal and totally change the theory of the case. I don't think that's fair. But we can't ignore the holding of the Pennsylvania Supreme Court in determining what a duty of care should be, can we? Yes, if you plead in the complaint and then you go on and plead and argue that this is your duty according to 323 you've waived it. Okay, I will let Mr. Ross... Well, we can still consider things even if they're not raised if we want to. Now, there you go. Okay, we'll be outside the statute but of course, you're the Third Circuit so you can do whatever you want. Thank you, Your Honor. Mr. Quast. So what do we look for in determining whether the duty should be broad or whether it should be as narrow as Ms. Hershberger says? Well, there are two key things Your Honor, at which to look. The first is what was the nature of the duty that was undertaken by the by their own express court. Do we look at the restatement that's section 323 or do we look at Pennsylvania Supreme Court law? Both. Because the restatement has been adopted in Pennsylvania and the five-part test as to whether there is a duty exists in any analysis of whether there is a duty. The restatement second of torts as I understand it is a description of those particular situations in which it has come down through the case law that a duty definitely exists. And that's the restatement provision that's what you relied upon. 323 as the duty, that's what the pleading is, that's what the discovery is that's what your brief in front of us is is all about a failure to comply with 323. So isn't that the duty that we should be examining? When we are looking at the issue of whether a duty exists and whether a duty ought to exist, as the district court in this case identified and delineated we're also considering the five-part test concerning the existence of a duty. What we're discussing here is the existence of a duty. So you want us to look at 323 and say okay, within the affirmative undertaking language of 323 that becomes illuminated by consideration of the five-part test? Yes, Your Honor. May I ask you, Mr. Kloss, the counsel for Andarco has just said that your complaint did not include anything beyond the specific requirement for signage and lighting. There was no general allegation sufficiently broad to include the laying out of a safe route and the duty and so forth. What do you say to that, sir? We ought not, Your Honor, confuse two issues, the pleading of a duty with the pleading of allegations of negligence. In the federal court, I believe that this is a notice pleading area, even if we were doing Well, it used to be. It's gotten a little more specific lately, but you're saying under your allegations of negligence in your complaint you have included statements about the obligation to provide a safe route. Is that what you're saying? No, Your Honor. I don't want to mislead the court in that way. What I am saying is Is it in your complaint or not? The answer is no, but it doesn't belong in the complaint. What's in the complaint are allegations of negligence. The negligence allegations here are still failure to provide lighting, failure to provide signage. The duty from which those negligence allegations arise is the broader duty to which Andarco has committed that it endeavored to select the safest route possible. It then put that... Well, how did your complaint put notice to the other party, the Andarco, that that's what you were relying on? I'm not aware of any obligation under Pennsylvania law, Your Honor, to specify the duty in a complaint. What we do in a complaint is to specify operative facts and then... Did you plead the factual matter in your complaint that they did not provide a safe route or was it limited everywhere to the specific obligation to provide signs and lighting? The allegations of negligence in the complaint, Your Honor, refer to lighting and signage. There is no broad-based allegation of negligence that says failure to provide a safe route, to the best of my knowledge. All right. Now, you just restated Chris Hersper's formulation of the duty, which is a duty to provide the safest possible route. Is that correct? Yes, and that was what Mr. Lorson, the corporate designee for Andarco, testified to, Your Honor. Okay. Do you agree that that's the duty? I agree that that's the duty and whether a breach of that duty existed therefore is a question for the jury. Moreover, the reason that we have cited both at the district court level and here to the Master Service Agreement is because Andarco, in its contractual agreement with QC Energy, required that QC Energy comply with Andarco-issued specifications. But if the duty then is duty to provide the safest possible route, how does that duty  on property that's not controlled by the entity? The fact that the entity doesn't control the property is, we argue, Your Honor, of no moment because it was practical and it was feasible. It could be done and it was inexpensive to do and it was terribly important for safety purposes to do it. How do we reconcile that with Statement 349, which talks about that an adjacent landowner to public roads doesn't have an obligation to do lights and signs? This isn't even an adjacent landowner. How do we reconcile 349 and what you just said? Well, the argument, the suggestion of the district court here and that's been adopted by Andarco, is that because the accident occurs off of the Andarco-designated roadway that no duty can exist. Yeah, I understand that and that's not what I'm asking. I'm simply asking, as I understand it, Section 349 of the Statement says an adjacent landowner doesn't have an obligation to make sure there are lights and signs on the roads that abut its property. Here, Andarco's pad is not even adjacent. So, as a result, how could Andarco have a responsibility mindful of 349? It may be that if Andarco had taken those steps, it would not have had such a duty. The nature of a 323 argument and the Good Samaritan rule is that in this particular case and in these particular facts, that Andarco assumed a duty it may not otherwise have had, Your Honor. And if I can... Mr. Larson, finish up your last comment. Mr. Larson testified and this is in the record of 1468. This is one of the few areas that we added additional signage once you got past an approved entrance to an approved route to an Andarco facility that basically said no Andarco traffic is what the sign said. So it wasn't the first time we put those out and it wasn't the last. We continually look at our operations and we put signage out as appropriate to minimize that potential. Are you saying the sign was there before the accident? No, Your Honor. It was not. Okay. Thank you, Mr. Quash. Thank you very much. We'll take the case under advisement and call the next case. Henry Nickelodeon, Consumer Privacy Litigation.